UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LISA GAYLE AMMERMAN, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Cause No. 3:15-cv-542 |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) ) ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

Lisa Ammerman suffers from back pain, neck pain, carpal tunnel syndrome, anxiety, and panic attacks. She has unsuccessfully applied for social security income three times, most recently on September 27, 2012, when an Administrative Law Judge found her capable of sedentary work and not disabled within the meaning of the Social Security Act. (A.R. at 19–38.[2]) Ammerman argues that the ALJ's decision must be reversed because: (1) he erred in finding in Step Three that her impairments did meet or equal Listing 1.04 (disorders of the spine); (2) he failed to accord weight to the opinions of several medical providers; and (3) his opinion is not supported by substantial evidence and contains serious factual mistakes and omissions. (DE 16 at 11–23.) Because I agree that the ALJ erred at Step Three and failed to accord appropriate weight to

---

[1]   Federal Rule of Civil Procedure 25(d) provides for the automatic substitution of Nancy Berryhill for her predecessor, Carolyn Colvin.

[2]   I will cite to the administrative record ("A.R."), which appears at docket entry 10, by reference to the Social Security Administration's Bates stamp number.

several medical opinions, the ALJ's decision is reversed, and the case is remanded for further proceedings.

**Background**

At the time of her hearing before the ALJ on May 13, 2014, Ammerman was thirty-five years old and lived in a mobile home on her parents' property with her 16-year-old son. (A.R. at 46, 49.) She had a tenth grade education and was not working. (*Id.* at 49, 52.) She had very minimal prior work experience and had last held a job more than a decade before, when she had a paper route. (*Id.* at 53.) Notwithstanding her health problems, Ammerman was able to care for herself without help (but with some pain) and do household chores (again with some pain and on her own pace). (*Id.* at 46, 58.) With the help of her son and her mother, she also was able to look after a dog, four rabbits, and several horses, and she could occasionally drive, garden, ride horses, and mow the grass with a riding lawn mower. (*Id.* at 46, 58–60.)

Ammerman applied for supplemental security income on May 31, 2012, alleging an onset date of August 8, 2009, when she was involved in a car accident so serious that it resulted in her brother's death. (*Id.* at 19, 43, 426.) After her claim was denied initially and upon reconsideration, she requested a hearing before an ALJ. (*Id.* at 19.) The ALJ held a hearing and subsequently issued an opinion that went through the ordinary five-step analysis and concluded that Ammerman was not disabled. (*Id.* at 19–38.) Most relevant to this appeal, the ALJ found at Step Two and Step Three that Ammerman suffered from two severe impairments, degenerative joint disease of the right shoulder

and disorders of the spine, but that she does not have a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart. P, Appendix 1. (*Id.* at 26.) In addition, the ALJ found at Step Four that Ammerman had the residential functional capacity to perform "sedentary work" as that term is defined in 20 C.F.R. § 416.967(a), but with the following limitations:

> she can lift, carry, push, or pull 10 pounds occasionally and five pounds frequently; stand and walk a total of two hours during an eight-hour workday; sit for a total of six hours during an eight-hour workday; occasionally stoop, balance, crouch, crawl, kneel, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and should avoid work hazards such as unprotected heights or unguarded, dangerous moving machinery.

(*Id.*)

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–4.) Ammerman timely sought review of that decision by filing this case.

## Discussion

An ALJ's decision should be affirmed so long as the ALJ applied the correct legal standard and substantial evidence supports the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (internal quotation marks and citation omitted).

Ammerman first argues that the ALJ erred at Step Three because he failed to articulate why Ammerman's back problems do not meet or equal Listing 1.04 and

3

because his conclusion was not supported by substantial evidence. (DE 16 at 11–15.) A claimant whose impairment meets or equals one found in the Listing of Impairments is presumptively eligible for benefits. *See* 20 C.F.R. § 404.1520(d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal quotation marks and citation omitted).

I agree with Ammerman. To meet or equal the criteria of Listing 1.04, a spine disorder must result in the compromise of a nerve root or the spinal cord and must be accompanied by the following characteristics:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*See* 20 C.F.R. § 404(P), App. 1, ¶ 1.04. The ALJ found that Ammerman's back problems did not meet or equal Listing 1.04 because:

> the evidence of record does not demonstrate current compromise of a nerve root (including the cauda eqina) or the spinal cord with additional findings of: (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising, or (b) spinal arachnoiditis, or (c) lumbar spinal stenosis resulting in pseudoclaudication, and also resulting in the inability to ambulate effectively.

(A.R. at 26 (footnote omitted).)

This language is nothing more than a summary of the Listing and a terse conclusion that Ammerman's back condition didn't meet or equal the Listing. *Compare id., and* 20 C.F.R. § 404(P), App. 1, ¶ 1.04. That conclusion is in contrast to evidence Ammerman presented that her spinal disorder involved a compromised spinal cord or nerve roots and featured several of the other requirements of Listing 1.04(A), including neuro-anatomical distribution of pain, limited motion of the spine, reflex loss, and numerous positive straight-leg raising tests. (*See, e.g.,* A.R. at 311 (noting "flattening of both L5 nerve roots" and "the right S1 nerve root"); *id.* at 366 (noting limited spine extension and rotation, positive straight leg tests on both sides and severe on the right); *id.* at 423 (noting reduced range of motion in all areas of the spine, as well as upper and lower extremities); *id.* at 395 (noting limitation of motion in both shoulders "due to low back pain"); *id.* at 397 (noting lower back pain with flexion of right hip, positive straight

5

leg raising test on right, reduced strength on right); *id.* at 296 (noting "right leg pain in the L5 and S1 distribution, numbness and decreased sensation in the S1 distribution right leg" and positive straight leg rising test and decreased reflexes on the right).)

Further, the ALJ's two-sentence conclusion is "the very type of perfunctory analysis . . . repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935–96 (citations omitted) (collecting cases remanding or reversing due to a cursory Listing analysis and/or articulation). In her brief, the Commissioner cites evidence suggesting that Ammerman did not suffer from muscle weakness, one of the requirements of Listing 1.04(A). (*See* DE 21 at 3–4.) But, while that might be true, "general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). It is up to the ALJ to sort out the conflicting evidence and provide more than a perfunctory explanation of his decision.

Nor does *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), the case relied upon by the Commissioner, mandate a different result. In *Pope*, the Seventh Circuit affirmed an ALJ's opinion even though the ALJ's articulation that the claimant's impairment did not meet or equal a Listing was minimal. 998 F.2d at 481 (overruled on other grounds). But the ALJ's decision there was supported by a reviewing physician's finding that the claimant's impairments were not equivalent to the Listing, a finding that the Seventh Circuit found the ALJ entitled to rely upon. *Id.* Here, the agency physician who

6

examined Ammerman (Dr. Brewer) made no such determination upon which the ALJ could have relied. (*See* A.R. at 418–26.) Further, although two agency doctors reviewed Ammerman's records and mentioned Listing 1.04 as one they'd considered, neither had a complete set of medical records at the time of review, and the additional records "show[ed] that the claimant is more limited in her abilit[ies.]" (*See id.* at 67–90.) Indeed, the ALJ acknowledged this handicap when he accorded the reviewing physicians' opinions just "some" weight. (*See id.* at 31.)

Under these circumstances, I cannot say that substantial evidence supported the ALJ's determination or that the Step Three analysis was sufficient. Accordingly, the matter must be remanded. The ALJ, of course, may conclude a second time that Ammerman's back problems did not meet or equal Listing 1.04, but, if so, then it must be after further analysis and development of the record.

Nor is this the only reason the case must be remanded. Ammerman argues that the ALJ also erred by incorrectly weighing or failing to weight the opinions of a number of medical providers. (DE 16 at 20–25.) I agree with respect to Dr. Kevin Rahn (Ammerman's orthopedic surgeon) and Dr. Rebecca Posner (a pain specialist who treated Ammerman). Dr. Kevin Rahn is an orthopedic surgeon who saw Ammerman several times in 2011 and one or more times several years before that. *(See, e.g., id.* at 293–97, 369–70, 372, 443–46.) Dr. Rebecca Posner is an anesthesiologist and pain specialist who treated Ammerman for her pain in 2011. (*Id*. at 365–67.) "Under the Treating Physician Rule, a treating physician's opinion regarding the nature and

7

severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (internal quotation marks and citation omitted); SSR 96-2P, 1996 WL 374188, at *1 (July 2, 1996). It makes sense to accord more weight to a treating physician's opinion "because they are most familiar with the claimant's conditions and circumstances." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (internal citation omitted).

The ALJ's opinion mentions Dr. Rahn's examination of Ammerman and his opinion that Ammerman should be permanently restricted to lifting no more than 10 pounds, but the ALJ never ascribed a weight to that opinion. (A.R. at 21-22.) This was an error, as ALJs are required to "always give good reasons . . . for the weight given to a treating source's medical opinion" and to provide "specific reasons for the weight given. . . . , supported by the evidence in the case record, and [with sufficient specificity] to make clear to any subsequent reviewers the weight the adjudicator gave . . . and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5. Nevertheless, I agree with the Commissioner that, with respect to Rahn, this was a harmless error that does not itself require remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). That's because the evidence in the record allows one to "predict with great confidence what the result on remand will be." *Id.* Here, the ALJ not only already considered Rahn's opinion, but also settled on a residual functional capacity for Ammerman that was entirely consistent with Rahn's findings. (*Compare* A.R. at 26 (finding that Ammerman

could only lift or carry 10 pounds occasionally and five pounds frequently), *and* DE A.R. at 450 (Dr. Rahn's note restricting Ammerman to lifting no more than 10 pounds on a permanent basis).) As a result, even if the ALJ gave Rahn's opinion great weight on remand, that wouldn't dictate a different conclusion about Ammerman's capabilities.

The story is a bit different with Dr. Posner. The ALJ's opinion describes Posner's examination and findings that Ammerman had a limited range of motion in her spine with lumbar pain and a positive straight leg raising test and that Ammerman had lumbar degenerative disc disease, a herniated/ruptured disc, radiculitis, and spondylosis—findings that might counsel in favor of concluding that Ammerman's disability met or equaled Listing 1.04. (*See id.* at 22.) As with Dr. Rahn's opinion, however, the ALJ failed to ascribe a weight to Dr. Posner's opinion and, if he didn't give it controlling weight, failed to explain why. *See id.* In the case of Posner's opinion, it's not possible to "predict with great confidence" what the ALJ might do on remand. *See McKinzey*, 641 F.3d at 892. As a result, the ALJ must be given another opportunity to determine whether Posner's opinion is entitled to controlling weight and, if not, explain why. *See* SSR 96-2P, 1996 WL 374188. This is the second reason this matter must be remanded.

For these reasons, a remand is necessary to permit the agency to further assess the evidence and develop the record regarding whether Ammerman's lower back problems, alone or in combination with other impairments, meet or equal a Listed Impairment and what weight should be accorded to Dr. Posner's medical opinion.

9

Because these grounds mandate remand, I will not address Ammerman's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

Accordingly, the decision of the ALJ is **REVERSED**, and this matter is **REMANDED** for further consideration consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of the plaintiff and against the defendant.

**SO ORDERED.**

ENTERED: March 27, 2017.

s/ Philip P. Simon<br>
JUDGE, UNITED STATES DISTRICT COURT